UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM G., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 20 C 5880 <br><br> Magistrate Judge Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

William G. seeks judicial review of the final decision of the Acting Commissioner of Social Security denying his claim for disability insurance benefits ("DIB"). William requests reversal of the ALJ's decision and remand, and the Commissioner seeks an order affirming the decision. For the following reasons, the Court reverses the ALJ's decision and remands this case for further proceedings consistent with this opinion.

**BACKGROUND**

William was born on January 26, 1964. In January 2016, just prior to his fifty-second birthday, William filed an application claim for DIB, alleging disability as of May 31, 2014 due to diabetes, arthritis, painful hands and fingers, cramps of hands and fingers, high blood pressure, high cholesterol, depression and anxiety, peripheral artery disease, heart disease, fatigue, cervical pain, and back pain. William suffered a heart attack in 2011 and subsequently, had a stent surgically placed in his right coronary artery. William testified that he has had memory issues since his heart attack. William is also obese and takes insulin to manage his diabetes. William completed four or more years of college and has an education degree. He has a work history performing various jobs. Prior to moving to Chicago, William worked as a teacher in Puerto Rico

for about six years. When he moved to Chicago, William taught various subjects as a substitute teacher at grammar schools for three years. He then worked as a merchandise deliverer for a woman's apparel company for five or six years. After the driving job, William temporarily worked at the post office for three months and then worked as a travel consultant for about five years. In 2013, he was laid off when the travel company merged with another company. William was last insured for DIB on December 31, 2017. Thus, he must establish that he was disabled as of that date. *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012).

William's application was denied at all levels, and he appealed to the district court on July 17, 2019. On March 10, 2020, this Court remanded the case for further proceedings pursuant to Defendant's agreed motion for reversal with remand. (R. 772-75). On May 5, 2020, the Appeals Council vacated the Commissioner's prior decision and remanded the case for resolution of several issues, including further evaluation of William's degenerative disc disease, his symptom allegations, and the non-examining source opinions from Keith Burton, Ph.D., and Howard Tin, Psy.D. *Id*. at 780-82. The Appeals Council further directed that upon remand, the ALJ will, among other things and if necessary, obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from William's impairments. *Id*. at 782.

The ALJ did not hold a new hearing on remand because William's date last insured of December 31, 2017 had past. (R. 707). On June 5, 2020, the ALJ found that William's degenerative disc disease and congestive heart failure were severe impairments though the date last insured but did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 710-13. The ALJ also found William's diabetes mellitus, hypertension, obesity, high cholesterol, mild retinopathy, mild cataracts, diverticulitis, colon polyps, and affective disorders were non-severe. *Id*. at 710-12. After considering the record, the ALJ affirmed

her previous decision that prior to the DLI, William had the residual functional capacity ("RFC") to perform a restricted range of light work involving: frequent pushing and pulling with the bilateral upper extremities, occasional reaching overhead to the right, and frequent stooping, kneeling, crouching, and crawling. *Id*. at 30, 713. The ALJ again concluded that William would need to be off task 10 percent of the workday. *Id*. The ALJ accepted the vocational expert's testimony that a person with William's background and RFC would be able to perform his past work as a travel consultant. *Id*. at 719. As a result, the ALJ found that William was not disabled from May 31, 2014 through December 31, 2017. *Id*. The ALJ did not determine, in the alternative, whether William was capable of engaging in other jobs that exist in significant numbers in the national economy. William has again sought judicial review of the ALJ's decision.

## DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled.

A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 US 197, 229 (1938)). "Although this standard is generous, it is not entirely uncritical." *Steele*, 290 F.3d at 940. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Id.*

In support of his request for reversal and remand, William argues, among other things, that the ALJ erred in failing to include in the RFC a limitation that he would be limited to one-to-two step instructions, as the state agency reviewing psychologists opined. The Court agrees that ALJ failed to provide accurate and logical reasoning, supported by substantial evidence, for rejecting a one-to-two step instructions restriction which would necessarily render him unable to perform his past relevant work as a travel consultant. Because this error requires remand on its own, the Court does not address William's other arguments.

The ALJ's weighing of the medical opinion evidence necessarily impacted her assessment of William's RFC. The RFC is the "most physical and mental work the claimant can do on a sustained basis despite [his] limitations." *Madrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). An opinion from a medical source on a claimant's RFC "may be rejected only with 'an accurate and logical bridge' between the evidence and the ALJ's decision." *Jeske v. Saul*, 955 F.3d 583,

4

593 (7th Cir. 2020). "An ALJ need not credit the opinions of the agency's own doctors, but *rejecting* the opinion of an agency's doctor that supports a disability finding is 'unusual' and 'can be expected to cause a reviewing court to take notice and await a good explanation.'" *Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014)); *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) ("an agency doctor [is] unlikely . . . to exaggerate an applicant's disability.").

When determining the RFC, the ALJ considered and partially rejected the only two opinions contained in the record regarding William's mental functional capabilities. The ALJ gave "some weight" to the opinions from the state agency reviewing psychologists, Drs. Burton and Tin, rejecting their opinion that William's mental impairment would limit him to 1-2 step instructions. No opinion of record contradicts Drs. Burton's and Tin's opinions. Moreover, the ALJ did not call a medical expert to testify at the original hearing on April 6, 2018 and on remand, the ALJ did not hold a hearing or seek an updated medical opinion. The Court reverses and remands because Drs. Burton's and Tin's uncontradicted opinions were consistent with the psychiatric consultative evaluation in the record and the ALJ did not articulate a valid reason for discrediting this evidence.

Turning to the record evidence, on June 30, 2016, Dr. Burton reviewed William's medical records, including the psychiatric evaluation completed by Dr. Angeles Gonzalez's on June 18, 2016. (R. 121, 123, 125, 126).[1] Dr. Burton found William had moderate limitations relating to

---

[1] On June 18, 2016, William was seen by Dr. Gonzalez for a psychiatric evaluation. (R. 462-66). Dr. Gonzalez noted that William was cooperative with good eye contact but became tearful and cried during the interview. *Id*. at 462. William reported a history of depression since 2011 or 2012, but he had not received counseling, other than martial counseling, and was never on medication management. *Id*. at 462-63. Dr. Gonzalez noted that William reported poor sleep, depressed mood most of the time, diminished concentration, needing to write things down otherwise he forgets everything, and having days when he feels hopeless and worthless. *Id*. at 463. Dr. Gonzalez also noted that William's "primary care physician recommended him to quit smoking and he prescribed Bupropion 150 mg twice a day and the primary care

5

understanding and memory and sustained concentration and persistence. *Id*. at 125-26. Specifically, Dr. Burton found moderate limitations in William's ability to: understand and remember detailed instructions; carry out detailed instructions; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id*. Dr. Burton noted that Dr. Gonzalez's "cognitive screening indicated that [William] could only recall 1 of 3 items after a 5 minute delay." *Id*. at 125. Dr. Burton opined that William "would be able to understand and retain simpler information." *Id*. In the narrative portion of the assessment, Dr. Burton opined that William's mental impairment is "likely a product of his general medical condition." *Id*. at 126. Dr. Burton noted that: (1) a mental status evaluation revealed a memory impairment but was otherwise within normal limits; (2) William's activities of daily living are modestly impaired by a mental condition; (3) he has no history of psychiatric hospitalizations, auditory verbal hallucinations, or suicidal ideation/homicidal ideation; and (4) he is currently treating with Bupropion for smoking cessation, but it has benefited his mood as well. *Id*. Accordingly, Dr. Burton found that overall, William "retains the capacity to engage in basic work activities, could understand and retain 1-2 step instructions without difficulty, and could sustain the concentration,

---

physician told him that this medication might help him also for his depression." *Id*. at 463. Dr. Gonzalez continued: "Therefore he is taking Bupropion 150 twice a day. He finds this medication helpful. He is almost not smoking and he thinks that it might help a little bit for his depression though he continued with a depressed mood." *Id*. Upon mental examination, Dr. Gonzalez noted that William's mood was depressed and he was able to recall only 1 out of 3 words in 5 minutes with cuing, did not know the number of weeks in a year, did not respond when asked to identify three current famous people or events, and could not perform basic multiplication. *Id*. at 464-65. Dr. Gonzalez's impression was that William presented with symptoms supporting the diagnosis of major depressive disorder, most likely secondary to general medical condition. *Id*. at 465. Dr. Gonzalez noted that William's symptoms have been present on and off for approximately the last three or four years. *Id*. Recently, he had experienced a little decrease with his depressive symptoms while taking Bupropion 150 mg twice a day for smoking sensation. *Id*. He assigned a current GAF of 40 to 45. *Id*. at 466. Dr. Gonzalez opined that William's prognosis was guarded because despite taking the Bupropion, he continued with a depressed mood as well as depressive symptoms. *Id*. at 465.

persistence, and pace required for competitive work." *Id*. On November 18, 2016, Dr. Tin reviewed the evidence available at the reconsideration determination and affirmed the mental RFC assessment of Dr. Burton. *Id*. at 137-38.

As previously noted, the ALJ must "build an accurate and logical bridge" from the evidence to her decision to discount Drs. Burton's and Tin's opinions. *See Jeske*, 955 F.3d at 587. The ALJ failed to give an accurate and well-support justification for declining to accept the state agency psychologists' mental RFC assessments. Nor did she identify other medical source opinions or objective medical evidence in the record that supports her contrary mental RFC determination. As a result, the ALJ's decision to reject the one-to-two step instructions finding is not supported by substantial evidence.

The ALJ gave "some wight" to Drs. Burton's and Tin's opinions because they "were consistent with and generally supported by the objective medical evidence at the time they were given." (R. 718). The ALJ then appears to assert four reasons for rejecting the one-to-two step instructions restriction of Drs. Burton's and Tin's opinions. None of the reasons provide substantial evidence supporting her conclusion. *First*, the ALJ pointed out that Drs. Burton's and Tin's mental health limitation findings were "primarily based on a one time psychological consultative evaluation which noted that [William] became tearful during the interview and said it was hard to concentrate—he had just lost his job when the travel agency for which he worked closed." *Id*. As an initial matter, the record does not support the ALJ's conclusion that William had "just lost his job" at the time of Dr. Gonzalez's June 2016 psychiatric evaluation. In fact, William told Dr. Gonzalez that he had not worked since 2013. *Id*. at 462; *see also id* at 456. Moreover, "the agency rules contemplate one-time consultative exams and that, by itself, is not a

7

legitimate reason to discredit a doctor's opinion." *Martha M. W. v. Berryhill*, 2019 WL 1299361, at *9 (D. Or. March 21, 2019).

*Second*, the ALJ noted that at that time of Dr. Gonzalez's evaluation, William "acknowledged no prior therapy except marriage counseling in 2011 or 2012, no prior hospitalizations and no medication for any psychiatric disorders." *Id*. at 718-19. But the Appeals Council has already explicitly rejected the ALJ's reliance on the fact that William "has had no treatment for mental health issues with the possible exception of an anti-depressant that he was prescribed to help [him] stop smoking" as a basis for discounting the opinions of Drs. Burton and Tin. *Id*. at 29, 781. The Appeals Council found that "Drs. Burton and Tin reviewed the evidence cited by the Administrative Law Judge and the Administrative Law Judge did not provide an adequate explanation to demonstrate the basis for her conclusion that the evidence led to a different result than opined by Drs. Burton and Tin." *Id*. at 781.

To the extent the ALJ continues to rely on the fact that at the time of the psychiatric evaluation, William had received no psychological treatment other than medication for smoking cessation to reject Drs. Burton's and Tin's one-to-two step instructions limitation, the ALJ again failed to explain how this evidence undermines their opinions. Both psychological consultants were aware of this evidence at the time they rendered their opinions in June and November 2016 and their evaluation of William's mental functional capacity necessarily included consideration of his treatment history. *Id*. at 121, 123, 126, 135, 138. In fact, Drs. Burton and Tin noted William's allegation of depression since 2011 or 2012 but also noted this was not documented in the medical evidence, there was no medication treatment other than Bupropion, and no psychiatric hospitalizations in assessing William's mental RFC. *Id.* Despite this evidence and based on their medical expertise, the state agency psychologists opined that William had more mental limitations

8

than found by the ALJ. Moreover, as discussed below, additional evidence was received at the hearing level that was not available at the time the state agency opinions were given which shows that William was treated with medication (Prozac) for his depression, so the lack of medication for his psychiatric disorders is not a valid reason for discounting the opinion evidence.

*Third*, the ALJ highlighted the fact that state agency psychological consultants concluded that William's mental impairment is "likely a product of his general medical condition" and his mental status evaluation revealed a "memory impairment but was otherwise [within normal limits]." (R. 719). However, the ALJ failed to provide any discussion as to why a mental impairment that is likely a product of a general medical condition is inconsistent with a limitation to one-to-two step instructions. Similarly, the ALJ did not articulate why the evidence of a memory impairment but otherwise normal findings at a psychiatric evaluation does not support a restriction to one-to-two step tasks.

*Fourth*, the ALJ's final reason for rejecting the state agency psychologists' limitation to one-to-two step work is that "per the record and his testimony," William "still has not sought out mental health treatment" and the "[s]tate agency did not have the opportunity to review or consider subsequent records (or lack thereof) or hearing testimony." (R. 719). It is not improper for an ALJ to discount the weight of an opinion based on subsequent record evidence. *See* 20 C.F.R. § 404.1527(c)(4) (ALJ is to consider consistency with the record as a whole when evaluating the weight to give any medical opinion). Using William's post reconsideration level failure to seek out mental health treatment as a basis for rejecting the opinions of the state agency psychologists is questionable in this case. This is because the psychologists were aware in 2016 of William's alleged depression since 2011 or 2012 but that he had not received mental health treatment (other than Bupropion for smoking cessation which benefited his mood) and they still imposed the one-

9

to-two step functional limitation in his mental RFC. The ALJ did not explain how the subsequent period of lack of mental health treatment translated into an ability to perform more than one-to-two step instructions. No expert reviewed or opined on the effect of the lack of more recent mental health treatment, yet the ALJ relied on this basis and concluded that William could perform more than one-to-two step instructions. In light of this record and without a medical opinion to support it, the ALJ was not permitted to rely on her assumption that William was capable of more than one-to-two step work because "he has still had not sought mental health treatment." (R. 719).

But most importantly, the record does not support the ALJ's conclusion that William "has still not sought out mental health treatment" so the ALJ did not provide an accurate and logical bridge between the evidence and her decision to discount Drs. Burton's and Tin's opinions. (R. 719); *cf. Fair v. Saul*, 853 F. App'x 17, 22 (7th Cir. 2021). The more recent medical records reveal additional developments in William's mental health treatment, which the ALJ did not mention in the most recent decision. Specifically, the post-reconsideration level evidence shows that on November 7, 2017, William was diagnosed with major depressive disorder, recurrent and moderate and was prescribed Prozac, an anti-depressant, 10 mg once a day. (R. 544, 555, 558). Two weeks later, on November 21, 2017, William was diagnosed with major depressive disorder, severe. *Id*. And on December 6, 2017, William's dosage of Prozac was increased to 20 mg once a day. *Id*. at 550. This evidence indicates William was in fact receiving medication treatment for mental health issues during the period after the state agency psychologists' reviewed the record. This evidence, which could be seen as supporting the opinions regarding William's mental capacity, further undercuts the ALJ's decision to reject Drs. Burton's and Tin's one-to-two step work restriction. Given that William had in fact sought out and received subsequent mental health treatment in the form of Prozac, which the ALJ did not address, the Court cannot conclude that the ALJ's decision

10

to discount Drs. Burton's and Tin's one-to-two step work limitation was based on substantial evidence.

The Commissioner argues that the ALJ did not err in omitting the one-to-two step work limitation from William's RFC because the ALJ was not required to "adopt each and every limitation opined by the reviewers" and the regulations require ALJs to evaluate medical records. Doc. 20 at 5-6. The Commissioner's argument fails. While the various regulations the Commissioner cites assign the evaluation of medical evidence to the ALJ (doc. 20 at 5-6) and further an ALJ is not required to adopt any particular recommendation about a claimant's ability to work, an ALJ is not permitted to "play doctor" and make independent medical conclusions that are unsupported by medical evidence in the record. *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). By rejecting the state agency reviewing psychologists' uncontroverted restriction to one-to-two step instructions, the ALJ impermissibly provided her own lay interpretation. *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (ALJ not allowed to "play doctor" by using her own lay opinions to fill evidentiary gaps in the record left when she rejected treating physician's reports); *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) (depression "is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges are the experts on it."). Moreover, the ALJ was required to—and did not—accurately and logically explain her reasoning for rejecting certain portions of the only medical experts' opinion in the record regarding William's mental functional capacity. *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014). Because the ALJ's rejection of the state agency psychologists' one-to-two step work finding failed to build the necessary accurate and logical bridge to her RFC finding in this regard, her decision cannot stand.

Furthermore, William has shown that the ALJ's failure to adopt the one-to-two step instructions restriction was not harmless, and the Commissioner does not argue otherwise. An

11

ALJ's error may be harmless and not require remand if the court is "convinced that the ALJ would reach the same result on remand." *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). If Drs. Burton's and Tin's one-to-two step instructions limitation had been credited and then included in the RFC, the outcome might have been different. "One- to two-step tasks function as a term of art in the Social Security context: [] the Department of Labor's Dictionary of Occupational Titles ("DOT") defines a Reasoning Development Level of 1 as the ability to '[a]pply commonsense understanding to carry out simple one- or two-step instructions.'" *Schlattman v. Colvin*, 2014 WL 185009, at *7 (N.D. Ill. Jan. 14, 2014).[2] Accordingly, a limitation to one-or-two step work restricts the person to a Level 1 Reasoning job under the DOT. *Id*; *Perry v. Colvin*, 945 F. Supp. 2d 949, 964 (N.D. Ill. 2013) (one-to-two step tasks limitation "translates to reasoning level 1"). The only job identified by the VE, the travel consultant job, has a reasoning level of 5, and therefore, would be precluded by a limitation to one-to-two step work. (R. 79, 80).[3] The ALJ did not ask the VE whether a hypothetical individual with William's RFC and a limitation to one-to-two step instructions could perform other jobs in the national economy, and the ALJ did not make an alternative step five finding. Accordingly, the ALJ's error was not harmless and requires reversal.

In short, "this is not a case of 'dueling doctors' where the ALJ was required to evaluate and resolve a conflict between the opinions of . . . physicians." *Michaels v. Apfel*, 1998 WL 767142, at *3 (7th Cir. 1998). Drs. Burton's and Tin's opinions are the only mental RFC assessments in the record, and no other medical source in the record opined on William's ability

---

[2]  In this context, there is no significant difference between one-to-two step instructions and one-to-two step tasks. *Hitchcock v. Colvin*, 2013 WL 3285120, at *11 (N.D. Ill. June 28, 2013). A claimant "cannot do multi-step tasks if she cannot follow multi-step instructions." *Id*.

[3]  The Commissioner does not dispute that the one-to-two step instructions restriction found by the state agency reviewing psychologists would limit William to reasoning level 1 and preclude the travel consultant job cited by the ALJ.

to perform multi-step instructions. Yet, the ALJ fashioned an RFC which found that William is able to perform a job which requires reasoning level 5 and did not identify an adequate evidentiary basis for her finding that William would not be limited to one-to-two step work. As a result, the ALJ's decision lacks the requisite substantial support. *Perry*, 945 F. Supp. 2d at 964; *Martinez v. Berryhill*, 2018 WL 2984829, *3 (N.D. Ill. June 14, 2018) ("ALJ restricted Plaintiff to 'simple, routine tasks' without explaining his reason for omitting the one-to two-step limitation [recommended by state agency reviewers] . . . . this situation demands remand so that the ALJ can either adopt the limitation or explain his decision not to do so."); *Diaz v. Berryhill*, 2017 WL 4163959, at *2 (N.D. Ill. Sept. 20, 2017) (finding ALJ erred when he gave some weight to state agency psychologists' opinions but did not explain why he rejected their "1–2 step job tasks" limitation). On remand, the ALJ shall articulate the basis for the weight given to the uncontradicted state agency reviewing psychologists' opinions and support that articulation with acceptable reasons that find substantial support in the record.

The Court recognizes another error not addressed by the parties but implicated by the ALJ's reliance on William's alleged recent failure to seek out mental health treatment in weighing Drs. Burton's and Tin's opinions. The ALJ also improperly discounted William's allegations of mental health issues due to his failure to seek mental health care without considering possible reasons he may not seek treatment. (R. 714, 715). The failure to seek treatment is a valid consideration in determining credibility, but an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013); *see* SSR 16-3p, 2016 WL 1119029, at *8-9 (Mar. 16, 2016). "[T]he agency has

13

expressly endorsed the inability to pay as an explanation excusing a claimant's failure to seek treatment." *Roddy,* 705 F.3d at 638; SSR 16-3p, 2016 WL 1119029, at *9.

In this case, the absence of subsequent mental health treatment is a troublesome rationale because other evidence in the record indicates that William may not have sought treatment for financial and transportation reasons. William explained to the ALJ at the hearing that he has been unable to treat his cataracts with prescription eye drops because his medical card for County Care did not cover the prescription and he does not have money to pay for the prescription. (R. 67). William further explained that he stopped attending physical therapy in January 2018 because he had moved from Cook County to Will County and he did not have transportation to make it to the appointments. *Id*. at 52; *see also id*. at 655. William testified that his driver's license expired and he does not have a vehicle. *Id*. at 69-71. William told the ALJ that his County Care card only provides medical and transportation services for residents in Cook County. *Id*. at 52, 71, 462. At time of the hearing, he was trying to get a similar medical card for Will County. *Id*. at 52-53. William indicated that he does not have any income, and he did not have permanent housing. He testified that he had been living for short periods of time with each of his adult children and their families and even in a homeless shelter before most recently moving in with his son. *Id*. at 52, 57-58, 73, 655. Significantly, William testified to his inability to attend mental health appointments because of transportation issues. He testified specifically that his psychiatrist and therapist "give me appointments but I can't make it because of where I live. It's too far away . . . . I did ask if there's anyone they could recommend that I could see over here in Joliet. She hasn't got back to me on that." (R. 86-87). Nevertheless and despite previously discussing William's "issues obtaining transportation," which resulted in him not participating in physical therapy or other treatment for his back and not seeing his doctors since his November 2017 lumbar spine MRI, the

14

ALJ did not consider the extent to which financial, transportation or other facts may have contributed to his not seeking out mental health treatment. (R. 714, 719). On remand, to the extent the ALJ relies on William's failure to seek mental health treatment, she must consider why he was unable to do so.

The Court mentions one additional error for purposes of remand. The state agency consultants noted that the third-party function report of William's daughter suggested some activities of daily living limitations. (R. 123, 135, 306-31). The ALJ gave only partial weight to William's daughter's statements because there was "no evidence that [his] daughter is medically trained, and she has a personal relationship with [William] that might affect her judgment in this matter." *Id*. at 714. However, an ALJ "cannot disregard a third-party statement merely because the author is not medically trained or is related to the claimant." *Grevich v. Berryhill*, 2019 WL 518552, at *6 (W.D. Wis. Feb. 11, 2019); *Dunn v. Saul*, 794 F. App'x 519, 523 (7th Cir. 2019) ("the ALJ's explanation that he discounted the daughter's testimony because she was not a medical professional does not adequately explain his decision to give little weight to her testimony" because her observations "concern[ed] daily living and did not require a professional degree."); *Roque v. Colvin*, 2016 WL 1161292, at *5 (N.D. Ill. March 22, 2016). On remand, the ALJ shall properly consider the third-party statement of William's daughter.

## CONCLUSION

For the foregoing reasons, William's request for reversal and remand is granted, the Commissioner's request that the Court affirm the ALJ's decision is denied, and this case is reversed and remanded for further consideration. On remand, the Court recommends that the Social Security Administration transfer this case to a different ALJ. *See Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996); *Ortiz v. Chater*, 1997 WL 50217, at *3 n.1 (E.D. N.Y. Jan. 30, 1997) ("rather

than have the same ALJ review the claims a third time, a fresh look by another ALJ would be beneficial.").

**SO ORDERED.**

Dated:  June 27, 2022

                                                Sunil R. Harjani
                                                United States Magistrate Judge